US DISTRICT COURT
DISTRICT OF NEBRASKA

APR 1 9 2023

OFFICE OF THE CLERK

**SEALED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:23CR 3052 |
| Plaintiff, | INDICTMENT |
| vs. | 18 USC § 1349 |
| | 18 USC § 1346 |
| VINCENT J. PALERMO, a/k/a "Vinny" | 18 USC § 1344 |
| JOHNNY PALERMO, and | 18 USC § 1343 |
| RICHARD GONZALEZ, a/k/a "Richie" | 18 USC § 2 |
| Defendants. | |

The Grand Jury charges that:

Count I – Honest Services Fraud Conspiracy

Introductory Allegations:

1. At times material to Count I, defendant VINCENT J. PALERMO, a/k/a "Vinny,"
   was a city councilman and elected public official for the City of Omaha, as well as
   a member of the Turn Back Tax Committee that awards funds to non-profits,
   including the Latino Peace Officers Association ("LPOA"). VINCENT J.
   PALERMO also participated at times material to Count I in securing city funding
   for Police Athletics for Community Engagement (hereinafter "PACE") and in the
   process of awarding fireworks permits to nonprofits in the City of Omaha.

2. At times material to Count I, defendant JOHNNY PALERMO was a police officer
   with the Omaha Police Department ("OPD") and President and board member of

1

LPOA. LPOA is a professional organization designed to promote the advancement of Latino professionals within OPD and other law enforcement organizations.

3. At times material to Count I, defendant RICHARD GONZALEZ, a/k/a "Richie," a former OPD police captain, was the Executive Director of PACE and a member of LPOA and falsely represented himself as a board member of LPOA. PACE is involved in administering and overseeing athletic programs for disadvantaged youth.

4. Between on or about January 1, 2018, and April 1, 2023, in the District of Nebraska and elsewhere, VINCENT J. PALERMO, JOHNNY PALERMO, and RICHARD GONZALEZ, defendants herein, and others known and unknown to the grand jury, did knowingly combine, conspire, confederate, and agree with each other to commit honest services fraud, to wit, they agreed to knowingly devise a scheme and artifice to defraud the residents of the City of Omaha of their intangible right to the honest services of City Councilman VINCENT J. PALERMO, and by interstate wires and means of facilities of interstate commerce, in violation of Title 18, United States Code, Section 1346 and Section 1343. Specifically, Executive Director RICHARD GONZALEZ and Police Officer JOHNNY PALERMO provided personal and financial benefits, to include airfare, luxury hotel accommodations, travel arrangements, and other items of value, through a stream of benefits, to City Councilman VINCENT J. PALERMO, in exchange for official actions and with the intent to influence official actions taken by City Councilman VINCENT J. PALERMO, for the benefit of LPOA, PACE, and themselves.

2

## Manner and Means of the Conspiracy

5. Defendants and others used the following manner and means to carry out the conspiracy and scheme to defraud:

6. It was part of the conspiracy and scheme to defraud that defendants JOHNNY PALERMO and RICHARD GONZALEZ, and others known and unknown to the grand jury, would provide VINCENT J. PALERMO with airfare and other accommodations to attend LPOA conferences at destinations such as San Diego, California; Houston, Texas; Denver, Colorado; and Minneapolis, Minnesota. VINCENT J. PALERMO would not go for the purpose of attending the conferences but would use the trips to socialize with JOHNNY PALERMO, RICHARD GONZALEZ, and others known and unknown to the grand jury.

7. It was part of the conspiracy and scheme to defraud that JOHNNY PALERMO and LPOA would note on receipts for which they entertained VINCENT J. PALERMO, "councilman" and that fifteen of those receipts totaled $2,931.37 of LPOA funds paid for dining and entertainment of VINCENT J. PALERMO.

8. It was part of the conspiracy to defraud that VINCENT J. PALERMO failed to disclose that LPOA donations and grant money were used to purchase VINCENT J. PALERMO's travel, to include airfare and hotel rooms, as required to be disclosed under state law on VINCENT J. PALERMO's Statements of Financial Interests filed with the Nebraska Accountability and Disclosure Commission.

9. It was part of the conspiracy and scheme to defraud, that VINCENT J. PALERMO and JOHNNY PALERMO would mispresent that they are cousins.

3

10. It was part of the conspiracy and scheme to defraud that VINCENT J. PALERMO failed to disclose his conflict of interest with LPOA when VINCENT J. PALERMO heard LPOA's applications for funds awarded by the South Omaha Turn Back Tax Committee and participated in decisions to award city funds to LPOA during material times for Count I. In total, the defendant participated in awarding $60,600 to LPOA through the South Omaha Turn Back Tax Committee.

11. It was part of the conspiracy and scheme to defraud that Councilman VINCENT J. PALERMO would select non-profits to receive fireworks permits at times material to COUNT I, and that VINCENT J. PALERMO selected LPOA and PACE each year material to Count I of the Indictment and that his consistent selections of LPOA and PACE for permits allowed RICHARD GONZALEZ to negotiate greater sums of money from local fireworks vendors for the benefit of LPOA and PACE over other nonprofits in the City of Omaha who were not favored by VINCENT J. PALERMO.

12. It was part of the conspiracy and scheme to defraud that RICHARD GONZALEZ used LPOA funds and PACE funds to fund travel for Councilman VINCENT J. PALERMO, to include a personal trip to Las Vegas in spring of 2019 with RICHARD GONZALEZ, JOHNNY PALERMO, and others known to the grand jury. LPOA funds were used to pay for the travel of RICHARD GONZALEZ's daughter's soccer coach, RICHARD GONZALEZ's sibling known to the grand jury, RICHARD GONZALEZ's friend and former owner of the Lemon Drop Bar, where LPOA donor funds were spent on Councilman VINCENT J. PALERMO,

4

JOHNNY PALERMO, and VINCENT J. PALERMO. The LPOA board did not

approve funding this trip. RICHARD GONZALEZ and JOHNNY PALERMO

allowed non LPOA members and their personal friends and associates to have this

Las Vegas trip paid for with charity funds without full knowledge and approval of

the LPOA board.

13. It was part of the conspiracy and scheme to defraud that the defendants worked

together to conceal VINCENT J. PALERMO's name on certain hotel rooms paid

for by LPOA for the defendant's benefit, to include a Marriott hotel room used by

VINCENT J. PALERMO on a trip to San Diego in September, 2022 and a

concierge suite for VINCENT J. PALERMO booked at a Houston Marriott

location in 2021.

14. As part of the conspiracy and scheme to defraud described above and in furtherance

of it, the defendants caused to be transmitted by means of wire communications,

communications in interstate commerce and utilizing facilities of interstate

commerce, the sounds and signals described below:

| Wire | On or About | Wire Description |
|---|---|---|
| LPOA debit card charge | 9/6/18 | LPOA debit card charged for VINCENT J. PALERMO's hotel room costs in Denver, Colorado for a stay from September 6, 2018, to September 8, 2018. |
| LPOA debit card charge | 9/6/18 to 9/8/18 | The LPOA debit card was billed for additional charges to VINCENT J. PALERMO's hotel room in Denver for charges at the Omni Hotel Pool Bar and Grille. |
| LPOA deposits City of Omaha Check from Turn | 2/28/19 | LPOA deposited a $19,000 check following VINCENT J. PALERMO's participation in their |

| Back Tax Committee | | Turn Back Tax Committee decision to act on LPOA's application for funds. |
|---|---|---|
| RICHARD GONZALEZ and JOHNNY PALERMO used LPOA card to purchase flights to Las Vegas, Nevada | 3/21/19 | RICHARD GONZALEZ put together a trip to Las Vegas, Nevada for his friends and family and the councilman, VINCENT J. PALERMO, and worked with JOHNNY PALERMO to charge airfare for the trip for the defendant and others to the LPOA account. VINCENT J. PALERMO's Allegiant Air ticket cost LPOA $397. Total airfare for the group was $3012. Turn Back Tax Committee funds were used for this Las Vegas trip. |
| LPOA card was used to secure hotel rooms for the trip to Las Vegas, Nevada | 3/29/19 to 4/1/19 | LPOA funds were used to pay for the hotel rooms for the group that traveled to Las Vegas, including the defendant, VINCENT J. PALERMO. |
| LPOA deposited City of Omaha Check from Turn Back Tax Committee | 01/22/20 | LPOA deposited $19,000 check following VINCENT J. PALERMO's participation in their Turn Back Tax Committee decision to act on LPOA's application for funds. |
| LPOA debit card was used to purchase airfare to Houston, Texas | 9/6/21 | LPOA card was used to purchase an airline ticket for the defendant, VINCENT J. PALERMO to travel to Houston, Texas from September 8, 2021, to September 10, 2021, via United Airlines. RICHARD GONZALEZ and a PACE employee known to the grand jury in the same transaction. Each airline ticket cost $466.80. |
| Check issued for Concierge Room at Houston Marriott Marquis Hotel | 10/13/21 | The defendant, VINCENT J. PALERMO stayed at a luxury hotel suite during the September, 2021, Houston trip that cost LPOA $5,402.02 and this was his personal hotel room. LPOA issued a check covering the cost of that luxury suite that the defendant caused to be deposited in his bank account on October 13, 2021. VINCENT J. PALERMO failed to disclose this payment. |
| LPOA deposits City of Omaha | 3/10/22 | LPOA deposited $7,000 check following VINCENT J. PALERMO's participation in their |

| | | |
|---|---|---|
| Check from Turn Back Tax Committee | | Turn Back Tax Committee decision to act on LPOA's application for funds. |
| Call intercepted between JOHNNY PALERMO and RICHARD GONZALEZ | 9/22/22 | RG - I think you should tell everybody to start turning in receipts.<br>JP – Okay…I-I bring mine tomorrow<br>RG - The people that are gettin reimbursed are comin in to get their money<br>JP - Oh, okay<br>RG - Right away, but it's all the rooms that were on the LPOA card, so<br>JP - Okay, yeah<br>RG - So, so what I did right now- I called Marriott<br>JP - Mhm<br>RG - I was missin one of our receipts and I called em up and-and asked em, so but th-I-I got the receipts for me, [PACE employee], Vinny, [LPOA fundraiser]…those rooms are done<br>JP - Okay<br>RG - And then the airfare…the tickets that you bought for me, [LPOA fundraiser], and [PACE employee] can you get that receipt soon?<br>JP - Yep, yep.<br>RG - Okay. I mean that-that's a good lil chunk of-a $5,000 I'm sure there and then you and [LPOA Board Member] and somebody else<br>JP - Yep<br>RG - Th-you bought three tickets for who else?<br>JP - Um me, [LPOA members]<br>RG - So that's six tickets right there<br>JP - Yep<br>RG - Okay, on-on the LPOA card, right?<br>JP - Yep |
| Call recorded between FBI Agent and VINCENT J. PALERMO | 10/14/22 | VP: This is Vinny.<br>SA: Hey, Mr. Palermo….I'm a Special Agent with the FBI.<br>VP: Okay…<br>SA:  From what I understand, there are annual disclosure forms that are filed as far as what businesses that a public official's affiliated with and so forth…I understand you have a small business, right? You're Vinny's Tree Service…<br>VP: Correct. |

| | | |
|---|---|---|
| | | SA: You own [it]…. <br> VP: Yep. <br> SA: I've got a form called Statement of Financial Interests. <br> VP: Ok. <br> SA:…had a couple questions about an entity called…LPOA… <br> VP: Yeah. <br> SA: What sort of affiliation do you have with that entity? <br> VP: …My cousin Johnny Palermo, who's a detective with the Omaha Police Department is the president of LPOA. <br> SA: Does LPOA make payments to you? <br> VP: No. <br> SA: Have you ever received money from them? <br> VP: No. |
| Call intercepted between JOHNNY PALERMO and VINCENT J. PALERMO | 10/14/22 | VP: I got a call from the same people that were calling you the other day. <br> JP: Downtown guys? <br> VP: FBI guys, yeah…They want to know if PACE or LPOA pay me?...every year we have to file disclosure statements with the city. You have to account for every penny that goes one way or another. The only thing I can think of is…the trips…these dirty rotten..they take a trip like last year to Houston and all of a sudden it's, you know oh my God. <br> JP: Right, right…they're digging, digging. They probably got a whole file on us now. <br> VP: Oh 100%. They're looking at you, me, [LPOA fundraiser], [PACE employee], Rich, [LPOA Board member], anybody that hangs out at the Lemon Drop, that's who they're looking at. <br> JP: Well fuck. <br> VP: If one little fucking trip has my name on it, and a ticket was paid by you, they're gonna say I should've claimed that. You know. <br> JP: Right. <br> VP: But the only thing it would be is plane tickets? You know? <br> JP: Yeah. Yeah. |

| | | |
|---|---|---|
| | | VP: Hotel rooms. Stuff like that. I don't, you know, I don't think any of them was ever in my name.<br>JP: Nah, nothing was in your name.<br>VP: They dig and they dig. You know better than anybody.<br>JP: Yeah.<br>VP: You get one little name…to see what it unravels…they unravel everything to see where the fucking money's going. …as an elected official, for a trip, I am supposed to claim it.<br>JP: You didn't go as an elected official. You just went as the homeboy. You are my cousin.<br>VP: Yep, exactly.<br>JP: It made me look into the Jewish people, and how they operate. They're like the mafia on top of the mafia….that's what we gotta be like, you know what I'm saying.<br>VP: They always have been…that's why district 66 is so tight…They take care of each other. I'll call Richie here in a little bit. |
| Call intercepted between Vincent Palermo and Richard Gonzalez | 10/14/22 | VP - Yep. Yep. They're gonna say that I was, I was paid by LPOA, and look at all the money I've got for them. And here's what I got for return. Free trips.<br>RG - Holy shit.<br>VP - That's their spin. That's the way they fucking work that madness.<br>RG - But you're an LPOA member too though, right?<br>VP - No. No. Unofficially.<br>RG - You're an associate member.<br>VP - Yeah associate member. I don't pay dues though.<br>RG - But you, you're probably gonna have to, you are, I mean you are an associate member. You'll probably have to say that at some point anyways…<br>VP - 100% dude. When he pulled my campaign disclosure file, which I know what that is…<br>Every fucking penny you get from somebody has to be on there. So, anyway….Which means they're, |

they're putting all their pieces of the puzzle together

RG - Mhm.Yep, these mother fuckers, bro.

VP - I know how this works… You guys better watch your shit

RG - Well, they, they seen you on the fucking, like you said, on a trip, people know that you went on a trip.

VP - They seen me on a trip…The only check I ever received was last year, otherwise I never turned in receipts for nothing...They're looking for the big ticket items and that $5,000 one is a big ticket item.

RG - Mhm

VP: …That's exactly what it is. I mean I know, but, like I said, it has to come from somewhere. And somebody fuckin ratted. And then when they start digging, then they start looking and that's, I mean that's what they found.

RG: They pulled your shit.

VP: ...They found something. But here's the thing. Is anybody else getting any fucking calls? Like, like, has anybody else reached out to Johnny and said "hey the FBI reached out to me," and, you know, no. Cause there are fucking people that will turn us in

RG: Yeah.

VP: But I just wanna give you a heads up cause I mean if they're calling me, technically they should be calling others.

RG: Keep me posted.

VP: Yeah. I mean, fuck, I ain't sweat'en it.

VP: This is the fucking FBI…This is a brand new opening of another web of what's going on.

RG: Yeah and it's no coincidence that's when you just came back from a trip with the LPOA.

VP: Yep.

RG: You don't think those fucks all know that?

VP: I saw [UI] They must want me to put that in there too. 100%...

VP: The FBI investigates finance disclosure problems. So this, again, this probably all got opened up by something else that was started….

| | | |
|---|---|---|
| | | They're going through one by one and picking everybody a-fucking-part that's affiliated. This is no coincidence.<br>RG: Right, right.<br>VP: So. That's how, hey, that's how the fucking mafia gets taken down. By little fucking parts of their web all, you know, this way, that way…<br>VP: [LPOA fundraiser's] shit will never make the fucking newspaper. Me getting fucking a kickback? From a non-profit in the city of Omaha? Oh by the way, my cousin's the fucking president? Dude.<br>RG: Mmhmm. |
| Conversation intercepted between RICHARD GONZALEZ and JOHNNY PALERMO | 10/14/22 | JP - Man just watching this fucking power, like OPPD truck been sitting outside of my house for 6 hours. Mother fuckers watching me dog.<br>RG - (Laughter) No shit.<br>JP - These mother fuckers been out here 6 hours. Hold up. You talk to Vinny?<br>RG - Yeah! God…I'll tell you right now Johnny, if anybody comes to talk, to try to talk to you. Just say hey man… just say you will have to talk to my accountant, I don't know.<br>JP - Ok.<br>RG - Right.<br>JP - Yeah.<br>RG - Like Vinny told them, I'm not talking to you…<br>JP - Mhm.<br>RG - There are going to try to spin this shit. Like Vinny was giving uh uh money to LPOA and in return he was getting free trips.<br>JP - Right, right. |
| Call intercepted between JOHNNY PALERMO and VINCENT PALERMO | 10/20/22 | JP: Well they're talking about kickbacks.<br>VP: Ah, see that's what they're talking to me. That's what they're talking to me about too.<br>JP: So [LPOA fundraiser] went and did an interview.<br>VP: Yeah.<br>JP: He thought it was about his taxes.<br>VP: Yeah. |

| | | |
|---|---|---|
| | | JP: But they were like, no, we want to know if you ever paid like somebody like Johnny Palermo. Or anybody on the board, you know what I mean?<br>VP: Yeah dude...They're investigating everybody for kickbacks. Which means somebody fucking ratted.<br>JP: Yeah somebody's talking.<br>VP: ...But you know what? Here's the other thing too...you better fucking believe somebody's seen us out somewhere and they seen that LPOA card pay and... they correlate it as a kick back....so I wonder if they think [LPOA fundraiser] is part of a kick back crew. |
| Conversation intercepted between LPOA Board Member #1 | 10/27/22 | BM #1 - How much did we spend at this conference, legit?<br>JP - I think 15.<br>BM #1 - But, but who, who all went that wasn't even...that's not even LPOA besides Vinny?<br>JP – [LPOA fundraiser], and [PACE employee known to grand jury].<br>BM #1 - So, then he gettin kickbacks, that's what it's going to look like.<br>JP - Right<br>BM #1 - Fuck man...why did we pay for him?<br>JP - I don't know, it was all Rich man, I don't know. I didn't even know he was going.<br>BM #1 - Fuck man, Jesus Christ, I guess I'd kinda quit asking questions, the less I know the better.<br>BM #1 - So who all, who else went that wasn't part of the group? Part of a legit group?<br>BM #1 – [PACE employee known to grand jury]<br>JP - mm-hmm<br>BM #1- Vinny?<br>JP - Yeah |
| Conversation intercepted between Witness #2 and VINCENT J. PALERMO | 11/2/22 | W-2: Well prepared to be pissed off at me.<br>VP: Ok<br>W-2: I got the knock knock on my door today and ... I answered it like a dummy... And they came up to me and showed me their badges...<br>VP: Yeah |

| | | |
|---|---|---|
| | | W-2:  And I panicked man…Well they just, uh, mainly, uh, they showed me four copies of… checks from the City of Omaha made payable to LPOA and it said [Board Member #4]. …wanted to know, uh, if what I knew about your Turns Backs Committee...<br>VP: Ha, ha, ha<br>W-2:  It has to be turned in if there were any gifts or luxurious trips given to a Council Member.<br>VP: Oh.<br>VP:  I know what they are after, they're after the trips I took as a member of LPOA.<br>W-2: As a member not as a City..<br>VP: As a member. I went as a member.<br>W-2: Ok<br>VP: And that money that was awarded to them, uh, they're free to use it as they want. If they're saying that I gave them City money and then in return that City money was used for me to go on a trip, no it was used for members to go on a trip.<br>W-2: …Which…I'm not giving them any information besides yes, no, or I don't know…<br>VP: …And you should have said that was before me. |
| Conversation intercepted between Board Member #3 and JOHNNY PALERMO following FBI interview of Board Member #3 | 12/9/22 | JP - Yo. They ask about uh like the San Diego trips and all that?<br>BM #3 – Yep...they talked about Vinny too<br>JP - Why'd they wanna know about Vinny?<br>BM #3 - All sorts a shit…<br>JP - What did Vinny do though? He went on trips with us<br>BM #3 - He can't! He has to disclose that<br>JP - I get that…<br>BM #3 - So it makes us look criminal<br>JP - Gotchu. |
| Conversation intercepted between VINCENT J. PALERMO and Witness #3 | 12/15/22 | VP: I got questions about why I pick the same people for fucking firework permits.<br>W-3: Seriously<br>VP: Like there's some uh kickback or bribe going on, it's like…there should be<br>W-3: (laughing) yeah<br>VP: There should be but there's fucking not. |

W-3: Vinny, I'm learning this shit. And, so, I met
with [non-profit known to grand jury]s guys last
night. We went to fucking the Drover.

VP: uh huh

W-3: …you fucking give them the firework permit
and you're a fucking rockstar

VP: Yeah…for me, my picks have been the same
for five fucking years…

W-3: You know what, Vinny, this thing was like
drinking out of fire hose for me... But now that I've
been through it once, and now listening to you,
you're right,[Fireworks Vendor #1] needs to go get
some fucking hookers and coke or whatever for
[non-profit known to grand jury] dude

VP: Yeah it's not the council members. It's your
fucking non-profits that have to go with you.
…Because I'm going with them whoever they pick.
I think my non-profits are going with [Fireworks
Vendor #2]. All of them. Because [Fireworks
Vendor #2] is probably smart enough to say, hey
this fucking Palermo is picking you three every
year. I'll give you whatever you want. I want them
three permits. That's how it's suppose to be.

W-3: Yup yup yup…. I'm not going to invest any
time. You know who I'm picking.

VP: Yup yup

VP: … I mean, it's simple fucking business. And
what I've heard is [fireworks vendor known to the
grand jury] don't like to pay as much as the others.
You know that's what Rich's biggest gripe with him
was. He was being fucking cheap with these non-
profits. You know. He was giving them 5 grand
and [Fireworks Vendor #2] comes in and said I'll
give you ten. Well, who the fuck you going to go
with. Cuz all they do is write them a check and
walk away. And they were like, no, [Fireworks
Vendor #1] don't want to raise his prices, he's being
cheap. We're not going with him. [Fireworks
Vendor #1]could have every one of them fucking
tents if he would just pony up.

W-3: Alright, very good to know.

VP: So

W-3: Alright, good shit man.

All in violation of Title 18, United States Code, Section 1349.

## Count II– Honest Services Fraud

Introductory Allegations:

1. At times material to Count II, defendant VINCENT J. PALERMO was a city councilman and elected public official for the City of Omaha, who voted on contracts awarded by the City of Omaha. VINCENT J. PALERMO also claimed to be the owner of Auto Glass Pro, LLC, a/k/a Omaha Glass Pro (hereinafter "Omaha Glass Pro"), between approximately the years of 2012 and 2019. VINCENT J. PALERMO is the sole proprietor of Vinny's Tree Service business that is co-located with Omaha Glass Pro on L Street in Omaha, Nebraska.

2. At times material to Count II, the current business owner of Omaha Glass Pro known to the grand jury, served as the manager of Omaha Glass Pro until approximately 2019 when VINCENT J. PALERMO transferred ownership of the company to him. From 2012 to approximately January 1, 2019, VINCENT J. PALERMO claimed ownership of Omaha Glass Pro on tax forms and other legal documents.

3. At times material to Count II, Omaha Glass Pro was a glass windshield repair and installation company that shares office space and lot space with Vinny's Tree Service. Omaha Glass Pro received over $93,000 in payments from the City of Omaha from contracts the City of Omaha awarded to Omaha Glass Pro.

4. Between on or about January 1, 2018, and April 1, 2023, in the District of Nebraska and elsewhere, VINCENT J. PALERMO, defendant herein, did devise a scheme

15

and artifice to defraud the public and the people of the City of Omaha of their intangible right to the honest services of City Councilman VINCENT J. PALERMO, and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce and by means of facilities of interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1346 and Section 1343, to include electronically submitted Statements of Financial Interest that concealed commercial rent payments, tax payments, vehicle loan payments and other items of value that VINCENT J. PALERMO received from Omaha Glass Pro and its current owner and former manager.

5. As part of the scheme to defraud the public of his honest services, VINCENT J. PALERMO received a truck from Omaha Glass Pro, that is a red 2018 Chevrolet truck. Omaha Glass Pro paid off the loan on his truck with the same checking account that received the city contract funds awarded to Omaha Glass Pro. The truck was paid off by Omaha Glass Pro during the timeframe that VINCENT J. PALERMO voted to award city contracts to Omaha Glass Pro.

6. As part of the scheme to defraud the public of his honest services, VINCENT J. PALERMO's commercial rent for his sole proprietorship, Vinny's Tree Service, was paid by Omaha Glass Pro at times material to Count II.

7. It was part of the scheme to defraud that VINCENT J. PALERMO failed to disclose the financial benefits and property that VINCENT J. PALERMO received from Omaha Glass Pro that he was required to disclose under state law on his Statements

of Financial Interests filed annually with the Nebraska Accountability and Disclosure Commission.

8. It was part of the scheme to defraud that VINCENT J. PALERMO voted on numerous city contracts awarded to Omaha Glass Pro without disclosing his conflict of interest with Omaha Glass Pro, except for one filed Conflict of Interest form that VINCENT J. PALERMO filed after ownership of the business was transferred over in 2019.

9. As part of the scheme to defraud the public described above, and reincorporated in each count below, VINCENT J. PALERMO in furtherance of the scheme, caused to be transmitted by means of wire communications, communications in interstate commerce and utilizing facilities of interstate commerce, the sounds and signals described below:

| Wire Description | Date | Wire Communication |
|---|---|---|
| II. Email Submission of Statement of Financial Interests | 3/1/23 | VINCENT J. PALERMO caused his 2022 Statement of Financial Interests to be filed electronically with the Nebraska Accountability and Disclosure Commission and there were material omissions on the Statement of Financial Interests, to wit commercial rent payments, vehicle loan payments, tax payments and other items of value received from Omaha Glass Pro. |

All in violation of Title 18, United States Code, Sections 1346 and 1343.

## COUNT III – Bank Fraud

Between on or about November 1, 2018, and on or about April 5, 2023, in the District of Nebraska and elsewhere,  VINCENT J. PALERMO, defendant herein, did

knowingly and intentionally execute and attempt to execute a scheme or artifice to

defraud certain financial institutions, to wit: First National Bank of Omaha, to obtain

money, funds, and property, that is $68,750 which debt was completely forgiven through

a Paycheck Protection Program "PPP" loan application and forgiveness application by

means of false or fraudulent pretenses or representations or promises, that is, by causing

the concealment of the fact that VINCENT J. PALERMO had a greater than 20%

ownership interest in Vinny's Tree Service at the time of the application and that

VINCENT J. PALERMO was disqualified from receiving PPP loan money due to his

status on federal probation at the time of the loan application.

   In violation of Title 18 United States Code, Sections 1344(1) and 2.

### COUNT IV – Honest Services Fraud

Introductory Allegations:

1. At times material to COUNT IV, defendant VINCENT J. PALERMO was a city

   councilman and elected public official for the City of Omaha, who voted on

   contracts awarded by the City of Omaha. VINCENT J. PALERMO voted on

   contracts for a concrete company known to the grand jury at times material to

   COUNT IV.

2. At times material to COUNT IV, the concrete contractor known to the grand jury

   also did personal work on VINCENT J. PALERMO's residence located in Omaha,

   Nebraska, at a discount and did work for Vinny's Tree Service, the defendant's

   Sole Proprietorship.

3. Between on or about January 1, 2017, and April 1, 2023, in the District of Nebraska and elsewhere, VINCENT J. PALERMO, defendant herein, did devise a scheme and artifice to defraud the people of the City of Omaha of their intangible right to the honest services of City Councilman VINCENT J. PALERMO, and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce and by means of facilities of interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1346 and Section 1343, to include electronically submitted Statements of Financial Interests that concealed discounted concrete work that the defendant received from a concrete contractor who was awarded City of Omaha contracts.

4. As part of the scheme to defraud the public of his honest services, VINCENT J. PALERMO had a concrete contractor who also does city contract work pour approximately 2,800 square feet of concrete for a "pool deck" in the defendant's backyard and around the defendant's pool, that was falsely invoiced and recorded in bookkeeping records as only 1,600 square feet of concrete, resulting in a substantial discount to the defendant from market price.

5. It was part of the scheme that VINCENT J. PALERMO assisted the concrete contractor with his city contract concerns and questions and voted for the concrete contractor to receive at least one city contract and contract extension.

6. It was part of the scheme that VINCENT J. PALERMO paid the concrete contractor in cash to attempt to conceal the transaction and the contractor

deposited a large portion of the proceeds in a bank account of the contractor's family member.

7. It was part of the scheme to defraud that VINCENT J. PALERMO failed to disclose the financial benefits and discounted concrete work that VINCENT J. PALERMO received from the concrete contractor that he was required to disclose under state law on his Statements of Financial Interests filed annually with the Nebraska Accountability and Disclosure Commission.

8. As part of the scheme to defraud the public described above, VINCENT J. PALERMO in furtherance of the scheme, on or about the date below, caused to be transmitted by means of wire communications, communications in interstate commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Wire Description | Date | Wire Communication |
|---|---|---|
| IV. Email Submission of Statement of Financial Interests | 3/1/23 | VINCENT J. PALERMO caused his 2022 Statement of Financial Interests to be filed electronically with the Nebraska Accountability and Disclosure Commission and there were material omissions on the Statement of Financial Interests, to wit an approximate discount of $10,800 on concrete work done in the defendant's backyard discounted to $15,200 from approximately $26,000. |

All in violation of Title 18, United States Code, Sections 1346 and 1343.

COUNT V – Wire Fraud

1. The allegations set out in Count I are hereby realleged as if set forth herein.

2. The allegations set out in Count II are additionally hereby realleged as if set forth herein.

3. At all times material to Count V, VINCENT J. PALERMO, was an elected official, that is a City Councilman for the City of Omaha and was required under Nebraska state law to file a "Statement of Financial Interests," annually with the Nebraska State Accountability and Disclosure Commission. Through that filing, VINCENT J. PALERMO was required to disclose any sources of income, rent, and gifts of more than $100 in value that VINCENT J. PALERMO received in the calendar year prior to the filing. VINCENT J. PALERMO was further required to disclose any businesses, non-profits, and other entities with which he had certain affiliations or ownership roles.

4. On or about April 2, 2019, to on or about April 5, 2019, VINCENT J. PALERMO devised and intended to devise, and participated in, a scheme to defraud the citizens of Nebraska, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

5. It was part of the scheme that VINCENT J. PALERMO would fail to disclose material income, rent, and other property and gifts valued at over $100, that VINCENT J. PALERMO received from Omaha Glass Pro, LPOA, and PACE on his "Statement of Financial Interests," to conceal those benefits from the Citizens of Nebraska.

6. It was part of the scheme that VINCENT J. PALERMO would take official acts as a City Councilman for the benefit of Omaha Glass Pro, LPOA, and PACE during the calendar year and he failed to disclose income, rent, gifts, and other property valued at over $100 from those entities.

7. It was part of the scheme that VINCENT J. PALERMO failed to abstain from votes and actions that involved Omaha Glass Pro, LPOA, and PACE during the same calendar year in which VINCENT J. PALERMO received income, rent, property, and gifts valued at over $100 from those entities and failed to declare any conflicts of interest with those entities.

8. As part of the scheme to defraud the public described above, VINCENT J. PALERMO in furtherance of the scheme, on or about the date below, caused to be transmitted by means of wire communications, communications in interstate commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Wire | Date | Description |
|------|------|-------------|
| V. Email submission of Form | 4/2/19 to 4/5/19 | VINCENT J. PALERMO caused his 2018 Statement of Financial Interests to be filed electronically with the Nebraska Accountability and Disclosure Commission and there were material omissions on the Statement of Financial Interests, to wit commercial rent payments, vehicle loan payments, tax payments, travel benefits such as hotel room costs and airfare, and other income, benefits, or gifts over $100 in value. |

All in violation of Title 18, United States Code, Section 1343.

### COUNT VI – Wire Fraud

1. The allegations set out in Count I are hereby realleged as if set forth herein.

2. The allegations set out in Count II are hereby realleged as if set forth herein.

3. On or about April 13, 2020, VINCENT J. PALERMO devised and intended to devise, and participated in, a scheme to defraud the citizens of Nebraska, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

4. As part of the scheme to defraud the public described above, VINCENT J. PALERMO in furtherance of the scheme, on or about the date below, caused to be transmitted by means of wire communications, communications in interstate commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Count | Date | Description |
|---|---|---|
| VI. Email submission of Form | 4/13/20 | VINCENT J. PALERMO caused his 2019 Statement of Financial Interests to be filed electronically with the Nebraska Accountability and Disclosure Commission and there were material omissions on the Statement of Financial Interests, to wit commercial rent payments, vehicle loan payments, tax payments, travel benefits such as hotel room costs and airfare, and other income, benefits, or gifts over $100 in value. |

All in violation of Title 18, United States Code, Section 1343.

23

## COUNT VII – Wire Fraud

1. The allegations set out in Count I are hereby realleged as if set forth herein.

2. The allegations set out in Count II are hereby realleged as if set forth herein, with the addition that VINCENT J. PALERMO did file a Conflict of Interest form on February 11, 2020, to abstain from a city contract vote for Omaha Glass Pro to the purposes of "Potential financial gain."

3. On or about February 19, 2021, VINCENT J. PALERMO devised and intended to devise, and participated in, a scheme to defraud the citizens of Nebraska, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

4. As part of the scheme to defraud the public described above, VINCENT J. PALERMO in furtherance of the scheme, on or about the date below, caused to be transmitted by means of wire communications, communications in interstate commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Count | Date | Description |
|-------|------|-------------|
| VII. Email submission of Form | 2/19/21 | VINCENT J. PALERMO caused his 2020 Statement of Financial Interests to be filed electronically with the Nebraska Accountability and Disclosure Commission and there were material omissions on the Statement of Financial Interests, to wit commercial rent payments, vehicle loan payments, tax payments, travel benefits such as hotel room costs and airfare, and other income, benefits, or gifts over $100 in value. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT VIII – Wire Fraud

1. The allegations set out in Count I are hereby realleged as if set forth herein.

2. The allegations set out in Count II are hereby realleged as if set forth herein.

3. On or about March 1, 2022, VINCENT J. PALERMO devised and intended to devise, and participated in, a scheme to defraud the citizens of Nebraska, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

4. As part of the scheme to defraud the public described above, VINCENT J. PALERMO in furtherance of the scheme, on or about the date below, caused to be transmitted by means of wire communications, communications in interstate commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Wire | Date | Description |
|------|------|-------------|
| VIII. Email submission of Form | 3/1/22 | VINCENT J. PALERMO caused his 2021 Statement of Financial Interests to be filed electronically with the Nebraska Accountability and Disclosure Commission and there were material omissions on the Statement of Financial Interests, to wit commercial rent payments, vehicle loan payments, tax payments, travel benefits such as hotel room costs and airfare, and other income, benefits, or gifts over $100 in value. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT IX– Wire Fraud

1. The allegations set out in Count I are hereby realleged as if set forth herein.

2. The allegations set out in Count II are hereby realleged as if set forth herein.

3. The allegations set out in Count IV are hereby realleged as if set forth herein.

4. On or about March 1, 2023, VINCENT J. PALERMO devised and intended to devise, and participated in, a scheme to defraud the citizens of Nebraska, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

5. As part of the scheme to defraud the public described above, VINCENT J. PALERMO in furtherance of the scheme, on or about the date below, caused to be transmitted by means of wire communications, communications in interstate commerce and utilizing facilities of interstate commerce, the signals and sounds described below:

| Wire | Date | Description |
|------|------|-------------|
| IX. Email Submission of Form | 3/1/23 | VINCENT J. PALERMO caused his 2022 Statement of Financial Interests to be filed electronically with the Nebraska Accountability and Disclosure Commission and there were material omissions on the Statement of Financial Interests, to wit to wit an approximate discount of $10,800 on concrete work done in the defendant's backyard discounted to $15,200 from a market price of approximately $26,000, commercial rent payments, vehicle loan payments, tax payments, travel benefits such as hotel room costs and airfare, and other income, benefits, or gifts over $100 in value. |

All in violation of Title 18, United States Code, Section 1343.

SEALED

A TRUE BILL.

FILED
US DISTRICT COURT
DISTRICT OF NEBRASKA

APR 1 9 2023

OFFICE OF THE CLERK

FOREPERSON

    The United States of America requests that trial of this case be held in Lincoln, Nebraska, pursuant to the rules of this Court.

LESLEY WOODS, TX #24092092
Assistant U.S. Attorney

27