IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:23CR3051 |
| | ) | 4:23CR3052 |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| RICHARD GONZALEZ, | ) | APPEAL OF MAGISTRATE'S ORDER OF |
| | ) | DETENTION; SUPPORTING BRIEF |
| Defendants, | ) | |
| | ) | |

COMES NOW the Defendant, RICHARD GONZALEZ, by and through his Attorneys Steve Lefler and Matthew Burns, and pursuant to Rule 46.2 (c) of the Criminal Rules of the UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA, appeals the Magistrate's ORDERS OF DETENTION filed April 28, 2023 at Document # 40 in matter 4:23CR3051, and Document # 39 in matter 4:23CR3052. The Brief in Support of this Appeal is included herein.

CAVEAT AND REQUEST

The undersigned should receive the transcript of the hearing from April 26 at some point next week, and we will be able to supplement this pleading with citations to the hearing transcript at that time. However, an audio disc of the hearing from April 26 was provided, and in some instances, citations to the testimony/record can be provided in minutes and seconds. The undersigned requests permission of the Court to allow him to supplement this pleading when he is in receipt of the typed transcript. As time is of the essence, the undersigned decided to present this Appeal/Objection now with the hope that once he receives the transcript, accurate page and line citations can be provided.

1

INITIAL STATEMENT

As related by Rule 46.2 (c) of the Criminal Rules of the UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA), "the district judge reviews an order of release or detention de novo on the record made before the magistrate judge." However, the rule also provides for the presentation of additional evidence if not heard by the Magistrate at the time of the hearing, or for good cause. Because the Magistrate indicated to the undersigned that she was only going to rely on basically irrefutable evidence like the words of a wiretap, and not unsubstantiated innuendos (1:00 - 1:11 of the audio disc), the undersigned did not call the approximately 10 witnesses present in court who could address the character assassination contained in the Government's case. The undersigned reasonably relied upon the directive of the Magistrate, which in hindsight was a mistake. It was a mistake because the Magistrate relied on those assumptions, innuendos and rumors of the government's case in her Order, despite her assertions in court to the contrary. This Court has the opportunity to correct that injustice. The undersigned has also filed a motion to offer additional evidence, where such evidence would come in the form of affidavits, each approximately 1-2 pages long, that will paint a more clear picture of Mr. Gonzalez, and confirm that he will in fact follow all of the Court's orders if not detained. These affidavits come from his family, as well as substantial members of the public.

PROCEDURAL HISTORY, LAW AND FACTS

Counsel for Defendant Olson has been kind enough to allow us to "piggyback" on his excellent presentation of the procedural history, law, and facts in the appeal. Rather than regurgitate that information, I would ask the Court to please take notice of filing 65.

As the record reflects, Mr. Gonzalez was named as a Defendant in both cases, and the applicable charges are essentially white-collar, fraud charges.

Attached to this brief as proposed Ex. 201, is the power point presented by Magistrate Zwart at a conference on Thursday, May 4, 2023. As the power point and Federal Rules indicate, where there is not a presumption, defendants should not be detained. With respect, if Magistrate Zwart followed the law she presented at the conference, Defendant Gonzalez should not be detained. Pretrial services even indicated that he could be released, and the undersigned is of the belief that the reviewing Court has the report.

Located at approximately 17:32 - 19:40 of the audio disc, S.A. Anderson testified that Mr. Gonzalez was not a flight risk; that he knew of this investigation since May of 2022 and did not abscond; and that when he was arrested, he was at home where he should have been. At approximately 20:30 - 22:00, she confirmed that all of the evidence developed in the investigation was secure and could not be accessed by any of the defendants. At approximately 23:25, she testified that the only real reason to detain was to prevent influencing of witnesses. However, on a de novo review, there is nothing which would indicate that once Mr. Gonzalez knew of this investigation, he did anything to influence witnesses, or to obstruct justice. At approximately 52:56, she testified that he never tried to influence any Grand Jury witness; at approximately 53:57 she testified that he did not try to influence any witness during the time he was under surveillance; at approximately 1:59, that again, he was not trying to tamper with witnesses; at approximately 2:03:46 - 2:14, she confirmed that he had not interfered with any investigators in this case, nor had he obstructed the rape investigation involving Olson. She also further testified and confirmed that when the search warrant was executed, and the authorities

3

had all of his electronic devices, including his phone, that there was no indication that he had destroyed evidence.

## ARGUMENT

All crimes involve some level of deception, either in the planning, execution or the aftermath. The theory of the AUSA seems to be that unless the individual citizen goes to law enforcement authorities and confesses, that person is obstructing justice and should be detained. Per the AUSA, if that person talks quietly to another, avoids potential intercepts, etc., he or she is obstructing justice. This principle contradicts the fundamental doctrines of the Fifth amendment, and respectfully, is patently absurd, and at the very least, should not defeat the Defendant's release under the least restrictive conditions possible.

This case has received so much publicity that it strains credulity to think that any of the defendants would be able to contact witnesses surreptitiously without that information brought forward. And who could they contact? The FBI has interviewed and/or has grand jury testimony and/or intercepts for probably everyone who can assist in making their case. Further, all of the physical evidence is under lock and key. Realistically, how can there be obstruction?

It is frustrating that the AUSA doesn't charge the defendants with obstruction, but uses it to ask for detention. If it's obstruction, then charge it. SA Stevenson said it will take us weeks if not months to go through discovery. If Mr. Gonzalez is detained, discovery review with Mr. Gonzalez is a trick in and of itself. By detaining him, you would effectively be limiting our ability to prepare for trial. We request that the Court balances that real concern against any fanciful allegation from the government that he would obstruct justice.

Narcotic officers are constantly accused of being dirty. It's part of the gig. Mr. Gonzalez has no IA investigations; no federal or state charges; was police officer of the year; etc. He retired in 2017, 6 years ago. At his retirement party, video thanks from the Mayor and the Chief of Police were played. Does it make sense that he rises to the level of Captain of the toughest unit in OPD, a unit that works with the FBI, DEA, etc, and any of these allegations he's dirty are ignored? Please make short shrift of these innuendos that he's a dirty cop who would ignore your orders.

Respectfully, the USA's position regarding the any involvement of Mr. Gonzalez in the alleged Olsen rape is over-reaching. Mr. Gonzalez told Olson to contact an attorney. George Merithew, a retired cop/current attorney, confirmed that anyone being investigated should contact an attorney. Every crime TV show would be guilty of aiding in obstructing, at least according to the AUSA. More importantly, the case was fully investigated by OPD, and turned over to the Douglas County Attorney's office, who declined prosecution.

To address the indictment a bit because it arguably touches on the question of whether Mr. Gonzalez is a danger to the community: both PACE and LPOA were arguable run a "little loosey-goosey." There are no minutes of board meetings because there were few, if any meetings; members who either did or did not stay current on things; voting done by texts; etc. Mr. Olson was brought in because, since the 1990's, he was the fundraiser for the OPD union, where he raised funds under the same percentage, or "split" that he had with LPOA. The AUSA may not like the percentage, or "split" that Olson received, but there are witnesses that would testify to that being an "industry standard." Mr. Olson had a written contract since 2018. For a board member to say he/she didn't know about the contract, is negligence at best, or a lie to cover their own backside. Further, the evidence offered shows that Mr. Gonzalez made sure that

he, not Olson, got the foundation money. For example, because of the efforts of Mr. Gonzalez, the Sherwood Foundation gave $100,000 for training. Olson would not get anything from that contribution. Additionally, Mr. Gonzalez would periodically reimburse LPOA when appropriate. Are those the actions of someone who should be detained? It was also testified to that it is not unusual to have elected officials attend national conventions so they can learn about the activities of the LPOA. Whether or not Mr. Vinny Palermo reported that benefit is not on Mr. Gonzalez. That trip occurred in 2019. Finally, there was an entertainment budget to induce cops to become volunteers. Additionally, further testimony would reflect that a charity organization "comping" meals or drinks is not something that is outside of the ordinary. There is the allegation that Mr. Gonzalez was writing checks for years, yet all these board members, who didn't attend meetings, or otherwise have an active hand in the organization, never worried about who was writing checks for years? Even if you want to ascribe criminality to writing checks, isn't that part of the fraud which has nothing to do with the legal determination of whether Mr. Gonzalez will obstruct justice in the future. Finally, the Magistrate in her Order said Mr. Gonzalez knew Vinny Palermo could not leave the jurisdiction, yet did not report it (filing 39, page 4). With respect, that is incredible. How is Mr. Gonzalez to know what the terms of Vinny Palermo's probation is, and/or whether Mr. Palermo got permission? This is a strong example of how the Magistrate simply bought what the government was selling, without considering more logical explanations, all to the detriment of Mr. Gonzalez (citations will be provided when we have the transcript).

CONCLUSION AND PROFFER OF ADDITIONAL FACTS

Regarding the affidavits provided, it is clear that he is a loving, and beloved family man, who is well respected in the community, and who does not need to be detained. As one of the affidavit author wrote: if the OPD cannot be trusted, to inform the FBI, if Mr. Gonzalez attempts to contact them, then we have a corrupt OPD. Which we don't. Latino officers face a toxic environment, and in spite of this Mr. Gonzalez was able to rise to the level of Captain (see affidavit if Mark Martinez). Both the Mayor and the Omaha Chief of Police even extolled his virtues upon retirement (see affidavit of Cynthia Gonzalez). Finally, Mr. Gonzalez also has health issues that need to be addressed, but which Saunders County can not manage (see Lucy Gonzalez affidavit).

WHEREFORE, the undersigned prays for an Order from the Court REVERSING the Magistrate's ORDER OF DETENTION, as to Mr. Gonzalez, in the above captioned matters, and for any further relief the Court deems just and equitable.

        RICHARD GONZALEZ, Defendant

By;  /s/ Steve Lefler
      Steve Lefler #15434
      Matthew Burns, #25437
      1213 JONES St.
      Omaha, Nebraska 68102
      (402) 342 4433
      Attorneys for Defendant

CERTIFICATE OF SERVICE

     The undersigned hereby certifies that a true and correct copy of the above and foregoing was forwarded to the parties by way of First Class Mail, Email, and/or Electronic service on MAY 12, 2023.

                                                           /s/ Steve Lefler
                                                             Steve Lefler